CRAIG CARPENITO
United States Attorney
MICHAEL E. CAMPION
SUSAN MILLENKY
Assistant U.S. Attorneys
970 Broad Street, Suite 700
Newark, NJ 07102
(973) 645-2700

ERIC S. DREIBAND
Assistant Attorney General
Civil Rights Division
SAMEENA SHINA MAJEED
Chief
R. TAMAR HAGLER
Deputy Chief
ERIN MEEHAN RICHMOND
KATHRYN LEGOMSKY
Trial Attorneys
Housing and Civil Enforcement Section
Civil Rights Division
U.S. Department of Justice
950 Pennsylvania Avenue NW – 4CON
Washington, DC 20530
(202) 307-0385

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                      Plaintiff,<br>     v.<br><br>JOSEPH CENTANNI,<br><br>                      Defendant. | Civil Action No. 2:20-cv-10053-JMV-MF |

**STIPULATION AND ORDER REGARDING DISCOVERY**

Pursuant to Fed. R. Civ. P. 26(f) and Local Civ. Rule 26.1(d)(3), Plaintiff, United States of America, and Defendant, Joseph Centanni, (each a "Party" and collectively, the "Parties") have entered into this Stipulation governing obligations concerning preservation and production of documents as a supplement to the Federal Rules of Civil Procedure, Court orders, and any other applicable rules or law to reduce the time, expense, and other burdens of discovery of documents, things, and electronically stored information ("ESI").

I.  **Preservation**

   A.  The Parties agree that by preserving documents, things, and ESI for the purpose of this litigation, they are not conceding that such material is discoverable, nor waiving any claim of privilege.

   B.  This Stipulation and Order does not modify any Party's obligation to maintain and preserve documents, things, and ESI where otherwise required by law, pursuant to a court order or administrative order, or in response to other anticipated litigation.

II. **Limitations on Obligation to Preserve and Produce**

   Subject to § IV.A, the Parties agree to limit preservation as described in this section.

   A.  The Parties do not need to take specific, affirmative steps to preserve:

   1.  Delivery or read receipts of e-mail;

   2.  Logs of or other data from audio calls (including landline phones, mobile devices, and Voice Over Internet Protocol (VOIP)) made to or from (i) attorneys or staff of the United States and/or (ii) attorneys or staff of defense counsel in this case;

   3.  Logs or other data from video-conferencing tools (*e.g.*, Skype or Zoom) involving (i) attorneys or staff of the United States and/or (ii) attorneys or staff of defense counsel in this case;

   4.  Voicemail messages on the voicemail systems of (i) attorneys or staff of the United States and/or (ii) attorneys or staff of defense counsel in this case;

   5.  Temporary or cache files, including internet history, web browser cache, and cookie files, wherever located;

   6.  Internally facing server system logs;

7. Externally facing or hosted file sharing system logs;

8. System data from photocopiers or fax machines;

9. Auto-saved copies of electronic documents;

10. Deleted, slack, fragmented, or other data only accessible by forensics;

11. Random access memory (RAM), temporary files, or other ephemeral data that are difficult to preserve without disabling the operating system; or

12. Documents, things, or ESI, including internal communications, drafts, versions, and collaboration on case-related work, created by and/or exchanged solely among: 1) attorneys or staff within the United States Department of Justice; 2) attorneys or staff of counsel of record for Defendant; 3) attorneys or staff of the United States Department of Justice and attorneys or staff of other government agencies; and/or 4) attorneys or staff for the United States, counsel of record for Defendant, and/or counsel of record for private parties in related litigation or who intervene in this case.

13. Video captured by security cameras located at Defendant's buildings and temporarily saved on hard drives located at the buildings will continue to be automatically deleted as new video files are captured and saved. However, if Plaintiff's counsel makes a request in writing to Defendant's counsel for Defendant to preserve video files from a specific date, time, and building, and camera if known, Defendant will make a good faith effort to save the requested video files within two business days of Defendant's counsel's receipt of a written request from Plaintiff's counsel to do so.

  B. The Parties do not need to preserve all duplicate copies[1] of relevant ESI, as follows:

    1. ESI existing or stored on mobile or portable devices (*e.g.*, smartphones, tablets, thumb drives, CDs, DVDs, etc.) or file sharing sites does not need to be preserved, provided that duplicate copies of the ESI, including metadata, are preserved in another location reasonably accessible to the Party.

    2. ESI on backup tapes, continuity of operations or disaster recovery systems, data or system mirrors or shadows, and other systems that are used primarily for the purpose of system recovery or information restoration and are not reasonably accessible ("Backup Systems") do not need to be preserved provided that duplicate copies of relevant ESI have been preserved in another reasonably accessible location. However, if a Party knows that relevant ESI exists only on a Party's Backup System, the Party will take reasonable steps to preserve ESI on the Backup System until the Parties can agree on how and when the ESI will be preserved or produced. If the Parties cannot reach agreement, they will seek a ruling from the Court.

  C. The Parties agree not to seek discovery of documents, things, and ESI that they have agreed not to preserve pursuant to this section.

**III. Identification & Production of Documents, Things, and ESI**

  A. Production Format

    1. ESI and hard copy paper documents will be produced in "load ready" format as specified herein.

---

[1] "Duplicates" are copies of identical documents identified with matching MD-5 hashes, which is a mathematically calculated 128-bit value used to create a unique identifier for an electronic file, that exist in more than one location.

2. Each hard copy paper document must be scanned and produced in electronic form as specified herein.

3. ESI must be processed with e-discovery software that extracts metadata and text and converts the document to image format that accurately represents the full contents of the document.

4. Black and white images shall be scanned or converted to single page Tagged Image File Format ("TIFF"), using CCITT Group IV compression at 300 d.p.i. and that accurately reflects the full and complete information contained in the original document. One image file shall represent one page of the document. Color content shall be produced as JPEG files at 300 d.p.i. using a high quality setting. Nothing in this provision prevents a Party from scanning, converting, and/or producing documents or content as color images.

5. For ESI and scanned hard copy paper documents, the text of all pages in the document must be saved as one file. If the extracted text of a native document does not exist or does not represent the entire document, Optical Character Recognition (OCR) will be provided instead.

6. Where paper files or file folders (such as tenant files or employee files) contain multiple, separate, individual documents, each separate individual document and the folder cover itself must be scanned and produced as separate documents with the Beg Attach and End Attach fields set to treat the contents of the physical folder as a Document Family. (See Appendix A.)

7. Metadata must be preserved and produced for the fields listed in Appendix A.

8. Deduplication will be used to remove exact duplicate documents from the production at the family level: *i.e.*, the Parties will take reasonable steps to not remove or delete attachments even if duplicated elsewhere in the production. The Parties agree to use MD-5 hash values for deduplication and calculate those values for all ESI at the time of collection or processing.

9. It is the responsibility of the Party responding to a discovery request to identify and produce responsive information including ESI.

10. All productions will provide a consistent load file with the same number and order of fields regardless of the types of documents in the production.

11. All images (*e.g.*, TIFF, JPEG) will be produced in a directory labeled IMAGES. Subdirectories may be created so that one directory does not contain more than 5000 files.

12. All native files (with the proper Windows-associated extension) will be produced in a directory labeled NATIVE. Subdirectories may be created so that one directory does not contain more than 5000 files.

13. An image cross reference file (a file in Concordance Opticon/Relativity .log format that contains Bates Numbers, paths to images, and document break indicators for all ESI in each production) and a load file containing all required metadata fields will be produced in a directory labeled DATA.

14. All extracted text and/or OCR will be produced in a directory labeled TEXT. OCR is searchable text generated for scanned documents or native files that is in ASCII format, where all pages in the document will be represented in one file. The parties agree to provide a text file for all documents, even if the size

of the file is zero. Subdirectories may be created so that one directory does not contain more than 5000 files.

15. Except for native files, the Parties will produce responsive documents Bates-stamped with a prefix to indicate the Party producing the documents (*e.g.*, USA____, CENTANNI____). For native files, which cannot be Bates-stamped, the Parties will rename the file as [Document Identification Number] with a placeholder image in the production containing the original name of the file.

16. Specifications for Specific File Types:

    i. Audio files and video files shall be produced as native files unless the native form is a proprietary format, in which case the file(s) should be converted into a non-proprietary format that can be played using Windows Media Player. For each audio or video file, a placeholder image containing the file name shall be included in the production.

    ii. Excel or other types of spreadsheets shall be produced as native files with all cells unlocked. For each Excel or spreadsheet file, a placeholder image containing the file name shall be included in the production.

    iii. PowerPoint files shall be produced as both (1) as color images with extracted text and (2) as native files with all notes unaltered and viewable. For each PowerPoint, a placeholder image containing the file name shall be included in the production.

      iv. Social media content (including comments, "likes," sharing, and other interactions with the post(s)) should be produced as individual images with extracted text, including information about the participants and the date and time of the communications.

      v. For production of tangible things and production of information from a structured database, proprietary software, vendor-managed software, or other source from which native production is not reasonably practicable, the parties will meet and confer before making any production to attempt to agree on a reasonable and proportional form of production that maintains the integrity of the tangible things or documents.

      vi. Oversized documents (*e.g.*, architectural, engineering, or zoning plans) must be produced as JPEG images or in hard copy paper form so as to retain the resolution and scale of the original document.

B. Production Specifications

1. Responsive documents and ESI will be produced via .zip file(s) uploaded to an electronic file transfer site, in accordance to the written instructions provided by counsel for the Requesting Party or as otherwise agreed by the Parties. In the case of documents and ESI produced by the United States, responsive information will be produced via .zip file(s) uploaded to the Justice Enterprise File Sharing System (JEFS).

2. Productions via electronic file transfer will be uploaded in a manner or otherwise clearly labeled to indicate (1) the Party producing the information, (2) the date of the production, and (3) the Bates-range(s).

3. If a Party needs to redact a portion of a document for which only a native file would be produced, the Parties will meet and confer regarding production of the redacted document.

4. The Parties agree to remove all encryption or password protection for all ESI produced or to provide passwords or assistance needed to open encrypted files.

C. Search Terms and Date Restrictions

1. The Parties shall meet and confer on search terms and date restrictions to be applied in their respective searches for ESI, if any, before applying any search terms or date restrictions. In the event that the Parties are unable to agree on search terms or date restrictions, any Party may ask the Court to resolve the dispute.

2. If a search term or query returns more than 3,000 documents, not including documents also returned from any other search term or query, the Parties shall meet and confer in an attempt to narrow any such search term or query.

IV. **Privileged Documents, Things and ESI**

A. If any discovery request appears to call for the production of documents, things or ESI the parties have agreed not to preserve under § II.A. or B., the responding party is not required to produce or identify such information on a privilege log. However, if a party preserves relevant documents, things, or ESI covered by § II.A. or B. to support

a claim or defense, the Party shall produce such information or identify it on a privilege log that identifies the custodian of the document and adheres to the requirements set forth in Federal Rule of Civil Procedure 26(b)(5), notwithstanding this subsection.

B. Inadvertent Disclosure of Privileged or Protected Information

1. The Parties agree that a disclosure of information contained within documents, things, and ESI that is protected by attorney-client privilege, attorney work product protection, common interest in litigation privilege, and/or applicable governmental privileges does not operate as a subject matter waiver in this case if: 1) the disclosure is inadvertent; 2) the holder of the privilege or protection took reasonable steps to prevent disclosure; and 3) the holder promptly took reasonable steps to rectify the error.

2. If the producing Party inadvertently discloses information that it asserts is privileged or protected, it will notify the receiving party within three business days of discovery of disclosure and identify the production date and the Bates number(s) or Document ID of all material that it believes contains the inadvertently disclosed information.

3. If a production contains information that the receiving Party believes is privileged or protected and was inadvertently produced, it will promptly notify the producing Party and provide the Bates number(s) or Document ID of the item it believes was inadvertently produced. Within 14 days after receiving notification, the producing Party may make a written request for return of the material. If the producing Party does not send a written request

for return of the material to the receiving Party within 14 days, the producing Party waives all claims of privilege or protection as to the material, but this still does not operate as a subject matter waiver.

4. When the receiving Party receives a written demand for return of the material, it will make reasonable, good faith efforts to promptly sequester, return, or destroy all inadvertently produced material identified by the producing party. If copies of inadvertently produced materials are located or stored on the receiving Party's Backup System(s), those copies need not be affirmatively removed but, rather, the receiving Party may overwrite those copies according to its normal records management procedures.

5. If the receiving Party must destroy or delete production media in order to destroy or delete inadvertently produced material, the producing Party will provide a duplicate copy of the production media minus only the inadvertently produced material within 14 days of its written request for return of the material to the receiving Party.

6. If the receiving Party intends to challenge the claim of privilege or protection or the inadvertence of the production, it will keep one copy of the inadvertently produced material in a sealed envelope or a sequestered location while seeking a ruling from the Court. Nothing in this Stipulation prevents access by a receiving Party's information technology or security personnel from accessing, in the normal course of their work, systems or locations where inadvertently produced material is sequestered. Any motion concerning the privileged nature of a document shall be filed under seal in accordance with

any sealing procedures required by the Court and all applicable Local Rules to protect the public disclosure of the document claimed to be privileged.

C. Privilege Logs

The Parties may take a categorical approach to privilege logs. For each category of privileged documents, the Parties shall include on their privilege logs: (a) a reasonably specific description of each category of privileged documents, and (b) the names and employers of all persons involved in privileged communications or work product within each category. The Parties need not include on their privilege logs any privileged document created on or after August 5, 2020.

V. **Miscellaneous**

A. Each Party shall bear the costs of producing its own documents, things, and ESI.

B. This Stipulation may be executed in counterparts.

C. The terms of this Stipulation and Order are not exhaustive. Each Party reserves the right to subsequently request to meet and confer to address any discovery matters, including forms of production and other matters not addressed herein.

D. None of the meet and confer provisions of this Stipulation shall be construed to extend the time within which a Party must respond to a discovery request.

**IT IS SO ORDERED this 12th day of January, 2021**

                          s/Mark Falk
                          **HON. MARK FALK**
                          **UNITED STATES CHIEF MAGISTRATE JUDGE**

Dated:    December 22, 2020

                Respectfully submitted,

**For Plaintiff, United States of America:**

| | |
|---|---|
| CRAIG CARPENITO<br>United States Attorney<br>District of New Jersey | ERIC S. DREIBAND<br>Assistant Attorney General<br>Civil Rights Division<br><br>SAMEENA SHINA MAJEED<br>Chief<br>Housing and Civil Enforcement Section |
| *s/ Susan Millenky*<br>MICHAEL E. CAMPION<br>Chief, Civil Rights Unit<br>SUSAN MILLENKY<br>Assistant U.S. Attorneys<br>970 Broad Street, Suite 700<br>Newark, NJ 07102<br>Phone: (973) 645-3141<br>Fax: (973) 297-2010<br>Email: susan.millenky@usdoj.gov | *s/ Kathryn Legomsky*<br>R. TAMAR HAGLER<br>Deputy Chief<br>ERIN MEEHAN RICHMOND<br>KATHRYN LEGOMSKY<br>Trial Attorneys<br>Housing and Civil Enforcement Section<br>Civil Rights Division<br>U.S. Department of Justice<br>950 Pennsylvania Avenue NW – 4CON<br>Washington, DC 20530<br>Phone: (202) 307-0385<br>Fax: (202) 514-1116<br>E-mail: erin.richmond@usdoj.gov |

**For Defendant:**

| | |
|---|---|
| *s/ Raymond S. Londa*<br>RAYMOND S. LONDA<br>Londa & Londa<br>277 N. Broad St.<br>Elizabeth, NJ 07202<br>Phone: (908) 353-5600<br>Fax: (908) 353-5610<br>Email: raymondslonda@outlook.com | *s/ Joseph A. Hayden, Jr.*<br>JOSEPH A. HAYDEN, JR.<br>BRENDAN M. WALSH<br>Pashman Stein Walder Hayden<br>Court Plaza South<br>21 Main St., Suite 200<br>Hackensack, NJ 07601<br>Phone: (201) 488-8200<br>Fax: (201) 488-5556<br>jhayden@pashmanstein.com<br>bwalsh@pashmanstein.com |

### APPENDIX A: Fields for Which Metadata must be Preserved and Produced

| Field Name | Definition | Applicability |
|---|---|---|
| **Begin_Bates** | Bates number for the first image of a document (or the Bates number of the placeholder page for a native document). | All documents and ESI |
| **End_Bates** | Bates number for the last image of a document (or the Bates number of the placeholder page for a native document). | All documents and ESI |
| **Begin_Attach** | Bates number for the first image of the first attachment or embedded file. | Only document families[2] |
| **End_Attach** | Bates number for the last image of the last attachment or embedded file. | Only document families |
| **Parent ID** | Bates number of the parent document. | Only "child" documents |
| **PgCount** | The number of images produced for this document (1 for placeholder). | All documents and ESI |
| **From** | "From" field in email. | Only emails |
| **To** | "To" field in email. | Only emails |
| **CC** | "CC" field in email. | Only emails |
| **BCC** | "BCC" field in email. | Only emails |
| **Subject** | "Subject" field in email. | Only emails |
| **Attachments** | File names of the attachments. | Only emails |
| **DateSent** | DateSent field from email. Include both date and time (format: 9/28/2012 1:16 PM or 9/28/2012 13:16:34). | Only emails |
| **Redacted** | "Yes" if the document has been redacted. | All documents and ESI |
| **Confidential** | Confidential Designation (if any). | All documents and ESI |
| **MD5Hash** | The MD5 hash value calculated when the file was collected or processed. | Only ESI (not scanned paper documents) |
| **Prod_FilePath** | The path to the native file on the production media. | Only ESI (not scanned paper documents) other than emails or text messages |
| **Native_filename** | Original name of the native file when the file was collected or processed. | Only ESI (not scanned paper documents) |
| **Text File Path** | Path to the text file on the production media. | All documents and ESI |

---

[2] Document Family means a group of related documents, including: (1) paper documents that were grouped together or physically attached by clips, staples, binding, folder, etc.; (2) email with its attachment(s); and (3) files with embedded documents

14