UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>JOSEPH CENTANNI,<br><br>Defendant. | Civil Action No. 2:20-cv-10053- JXN-AME |

**CONSENT DECREE**

1. To avoid the expense, delay, and inconvenience of protracted litigation, the Parties have voluntarily agreed, as indicated by the signatures below, to resolve the United States' claims against Defendant through this Consent Decree, without the necessity of a public hearing on the merits and without admission of liability or wrongdoing on the part of Defendant.

2. This Consent Decree shall not constitute an admission or acknowledgment of liability by Defendant or a defemination by the Court on the merits of any claims asselied or issues raised by the United States.

**I.  INTRODUCTION**

3. This action was filed by Plaintiff United States of America ("United States") on August 5, 2020, to enforce Title VIII of the Civil Rights Act of 1968, as amended by the Fair Housing Amendments Act of 1988, 42 U.S.C. §§ 3601-3631 ("Fair Housing Act" or "FHA"). The United States' Complaint alleges that Defendant Joseph Centanni ("Defendant") engaged in a pattern or practice of violating the Fair Housing Act. *See generally* Compl., ECF No. 1.

1

4. The United States' Complaint alleges that since at least 2005, Defendant Centanni has subjected actual and prospective tenants of residential rental properties that he owned and managed to discrimination on the basis of sex, including unwelcome and severe or pervasive sexual harassment, on multiple occasions. Examples of such conduct include, but are not limited to, the following:

   a. Demanding that prospective tenants provide him with sexual favors, including oral sex, in order to obtain housing;

   b. Demanding that actual tenants provide him with sexual favors, including oral sex, in order to not lose housing;

   c. Offering to grant tangible housing benefits—such as reducing rent, helping to obtain rental assistance, or excusing late or unpaid rent—to tenants in exchange for sexual favors, including oral sex;

   d. Subjecting actual and prospective tenants to unwelcome sexual touching;

   e. Exposing his genitals to actual and prospective tenants;

   f. Making unwelcome sexual comments and sexual advances to actual and prospective tenants; and

   g. Taking adverse housing actions, such as initiating eviction actions, or threatening to do so, against tenants who objected to or refused his sexual advances.

5. The United States alleges that the conduct described above constitutes a pattern or practice of resistance to the full enjoyment of rights granted by the FHA and a denial to a group of persons of rights granted by the FHA that raises an issue of general public importance. Defendant denies these allegations.

6. The United States and Defendant (collectively, the "Parties") agree that this Court has jurisdiction over this action and may grant the relief sought herein under 28 U.S.C. §§ 1331 and 1345, and 42 U.S.C. § 3614(a).

## II. DEFINITIONS

7. "Aggrieved Person" or "Aggrieved Persons" means (an) individual(s) who claims to have been injured by a discriminatory housing practice as defined in 42 U.S.C. § 3602(i).

8. An "Arms-Length Transaction" is one that has been arrived at in the marketplace between independent, non-affiliated persons, unrelated by blood or marriage, with opposing economic interests regarding that transaction.

9. A "Bona Fide, Independent Third-Party Purchaser" means a buyer with whom Defendant has no financial, contractual, personal, or familial relationship now, or at any time within the last five (5) years. A "personal relationship" includes a relationship with any individual who visited Defendant in a non-business capacity at any of the Subject Properties. A corporation or entity of which Defendant, or any person related to Defendant by blood or marriage, is an officer, partner, employee, or agent, or in which Defendant has an ownership, financial or controlling interest, is not a "Bona Fide, Independent Third-Party Purchaser," and any transaction involving such a purchaser will not qualify as an "Arms-Length Transaction."

10. "Contact or Communication" means physical contact, verbal contact, telephone calls, video calls, e-mails, faxes, written communications, text or instant messages, contacts through social media, or other communications made through third parties.

11. Discrimination "because of sex" includes discrimination based on sex, sexual orientation, or gender identity.

12. "Dwelling" means any building, structure, or portion thereof which is occupied as, or designed or intended for occupancy as, a residence by one or more families, and any vacant land which is offered for sale for the construction or location thereon of any such building, structure, or portion thereof.

13. "Effective date of this Consent Decree" means the date of entry of this Consent Decree.

14. "Property Management Responsibilities" means, with respect to any residential rental dwelling: showing or renting housing units; processing rental applications; choosing contractors to make repairs; performing or supervising repairs or maintenance; determining tenant eligibility for subsidies or waivers of fees and rents; determining whom to rent to, whom to evict, and/or whose lease to renew or not renew; inspecting dwelling units; collecting rent and fees; entering rental units; overseeing any aspects of the rental process; or engaging in any other property-related activities that involve, or may involve, personal contact with tenants or prospective tenants, including contact by telephone call, video call, e-mail, fax, text or instant message, contacts through social media, or other communications made through third parties other than Independent Manager.

15. "Subject Property" or "Subject Properties" means any residential rental property Defendant owned at the time the United States filed the complaint in this matter, or acquired since the filing of the United States' complaint. These properties are listed in Attachment A.

**Accordingly, it is hereby ADJUDGED, ORDERED, and DECREED as follows:**

### III. PROHIBITION AGAINST DISCRIMINATION AND RETALIATION UNDER THE FHA

16. Defendant, his agents, and all other persons or entities in active concert or participation with him, are enjoined, with respect to the rental of dwellings, from:

4

    a. Refusing to rent or sell a dwelling, refusing or failing to provide or offer information about a dwelling, refusing to negotiate for the rental or sale of a dwelling, or otherwise making unavailable or denying a dwelling to any person because of sex;

    b. Discriminating against any person in the terms, conditions, or privileges of the rental of a dwelling, or in the provision of services or facilities in connection therewith, because of sex;

    c. Making any statement, oral or written, in connection with the rental or sale of a dwelling, that expresses or indicates any preference, limitation, or discrimination, or an intent to make any such preference, limitation, or discrimination, because of sex; or

    d. Coercing, intimidating, threatening, or interfering with any person in the exercise or enjoyment of, or on account of having exercised or enjoyed, or on account of having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by the Fair Housing Act, including by retaliating against any person exercising their rights under this Consent Decree.

## IV.   PROHIBITION AGAINST PROPERTY MANAGEMENT

17. Defendant is permanently enjoined from directly or indirectly performing any Property Management Responsibilities at any Subject Property or any other residential rental property.

18. Defendant will not enter any Subject Property except if authorized by a court and accompanied by a third party. At every Subject Property, this prohibition includes, but is not limited to, entry into any occupied or unoccupied dwelling unit, office, basement, attic, communal

space, laundry room, boiler room, storage room, yard, parking area, and garage.

## V. PROHIBITION AGAINST CONTACT WITH AGGRIEVED PERSONS AND OTHERS

19. Defendant is permanently enjoined from contacting or communicating with, either directly or indirectly: (1) any person the United States has identified as an Aggrieved Person in its initial disclosures, preliminary determinations (*see* Para. 28, below) or final determinations (*see* Para. 29, below); (2) any person the United States has identified as a corroborating witness in its initial disclosures; and (3) any person whom Defendant knows or believes to be a family member or close relation of any of the Aggrieved Persons. Nothing in this Paragraph shall preclude Defendant's counsel, Defendant's counsel's employees, or anyone hired by Defendant's counsel from contacting or communicating with any such person for the purpose of defending Defendant in civil or criminal proceedings.

20. In the event that any individual within the categories identified above initiates contact or communication with Defendant or if Defendant inadvertently or unintentionally makes any contact with any such individual, Defendant will immediately discontinue the Contact or Communication and take all reasonable steps to avoid any further Contact or Communication.

## VI. ACQUISITION OR TRANSFER OF INTEREST IN RESIDENTIAL RENTAL PROPERTIES

21. Defendant represents and has documented that he has sold all of the Subject Properties to Bona Fide, Independent Third-Party Purchasers in Arms-Length Transactions, except that, with the permission of the United States, he sold: 242 Edgar Place, a single family home, in an Arms-Length Transaction to the former employee who currently occupies the home; and 45-51 Morris Avenue in an Arms-Length Transaction to his former real estate broker.

22. Defendant is permanently enjoined from acquiring any future direct or indirect management, ownership, financial, or controlling interest in any other residential rental property.

Defendant is also permanently enjoined from converting any commercial or other property he currently owns into residential use.

23. For each Subject Property, Defendant has provided to the United States the date of the sale or transfer, a copy of the deed, and contact information for the new owner. Defendant is permanently enjoined from entering any such property.

## VII. REPORTING

24. Six (6) months after the date of entry of this Consent Decree, and every six (6) months thereafter for the term of this Consent Decree, Defendant will file a report with the Court in which he: (1) confirms that he does not own any residential rental property; (2) confirms that he is not directly or indirectly performing any Property Management Responsibilities at any Subject Property or any other residential rental property; and (3) confirms that he is in compliance with all other terms of this Consent Decree. Defendant will submit the final report to the United States no later than sixty (60) days before the expiration of this Consent Decree.

## VIII. MONETARY DAMAGES FOR AGGRIEVED PERSONS

25. Within thirty (30) days of the effective date of this Consent Decree, Defendant will deposit $4,392,950 for the sole purpose of compensating Aggrieved Persons. This money will be referred to as "the Settlement Fund." Within five (5) business days of the establishment of the Settlement Fund, Defendant will submit proof to the United States that the account has been established and that the funds have been deposited.

26. If not previously provided, Defendant will produce any rental/tenancy records in his possession, custody, or control or any other nonprivileged records in the possession, custody, or control of Defendant, that the United States reasonably requests for the purpose of identifying persons who may be entitled to relief under this Consent Decree. Defendant may object to any such request on the grounds that the burden and expense of the requested information outweighs its

likely benefit or is otherwise not proportional to the needs of the United States. Defendant may also object to any such request on the grounds that the requested records are not in his possession, custody, or control. Requests for tenant files are presumed to be reasonable and proportional. If the parties cannot reach agreement on any request for records under this Paragraph after a good faith effort, any party may seek the Court's assistance at any time.

27. Nothing in this Consent Decree will preclude the United States from making its own efforts to locate and provide notice to persons who may be entitled to relief under this Consent Decree.

28. Potential Aggrieved Persons will have one hundred eighty (180) days from the entry of this Consent Decree to contact the United States. The United States will investigate the claims of allegedly Aggrieved Persons for no longer than one hundred twenty (120) days from the expiration of the deadline for Potential Aggrieved Persons to contact the United States. Upon the conclusion of its investigation, the United States will promptly inform Defendant in writing of its preliminary determinations, together with a copy of a sworn statement or declaration from each Aggrieved Person setting forth the factual basis of the claim. In the event that an Aggrieved Person dies before they are able to give a sworn statement or declaration, the United States will provide Defendant with a summary setting forth the factual basis of that Aggrieved Person's claim. Defendant will have twenty-one (21) days to review the sworn statements, declarations, or summaries and provide to the United States any documents or information that he believes may refute the claims. Defendant is not obligated to refute the claims of any allegedly Aggrieved Person even if he disputes the validity of such claims. Defendant's failure to refute any such claim shall not constitute an admission or agreement to the claim.

29. The United States will submit its final determination to Defendant, identifying the Aggrieved Persons and the appropriate amount of damages that should be paid to, or for the benefit

of, each such person. Defendant hereby waives the right to dispute the United States' final determination in this or any other proceeding.

30. The Parties agree that the entire Settlement Fund will be distributed to Aggrieved Persons identified by the United States and the Parties expect that there will be no monies remaining in the Settlement Fund after such distribution.

31. Within ten (10) days of receiving the United States' final determination, Defendant will deliver to counsel for the United States, by overnight mail or personal delivery to the United States Attorney's Office for the District of New Jersey, checks payable to, or for the benefit of, the Aggrieved Persons in the amount specified in the United States' final determination.

32. In no event will the aggregate of all such checks exceed the sum of the Settlement Fund.

33. When counsel for the United States has received a check from Defendant payable to, or for the benefit of, an Aggrieved Person and received a signed release in the form of Attachment B from the Aggrieved Person, counsel for the United States will deliver the check to the Aggrieved Person and the signed release to counsel for Defendant. If an Aggrieved Person is deceased, the administrator or executor of the Aggrieved Person's estate (or another representative as recognized by law) will sign the release and/or receive the check for the estate. No such persons will receive a check until they have executed and delivered to counsel for the United States the release at Attachment B.

34. Upon distribution, the United States will specify the amounts distributed through a separate notice ("Disbursement Notice") publicly filed with the Court. The Disbursement Notice will set forth the amounts to be received by each Aggrieved Person, who will be identified by their initials. The Defendant hereby waives his right to object to the disbursements identified in the

Disbursement Notice.

35. The parties stipulate that the compensation required to be paid under this Section is a debt within the meaning of 11 U.S.C. § 523(a)(6). Accordingly, Defendant will not seek to discharge any part of this debt in bankruptcy. This stipulation does not constitute an admission of wrongdoing by Defendant.

36. In the event that any of the checks sent to the United States is not cashed, deposited, or otherwise negotiated within six (6) months of the date the check was issued, Defendant agrees to cancel any such check and issue one or more new checks as directed by the United States, either in the name of the individual who failed to deposit the cancelled check, or to other Aggrieved Persons. The failure of any Aggrieved Person to deposit any check issued by Defendant shall not impact the validity or enforceability of the release executed by such Aggrieved Person to Defendant. In no event shall the Settlement Fund be held open for more than two (2) years from when the United States submits its final determination to Defendant, as set forth in Paragraph 29 above. If any checks issued by Defendant are not cashed, deposited, or otherwise negotiated after said two (2) year period, Defendant shall have no further obligation to re-issue or honor same.

## IX. ADDITIONAL RELIEF FOR AGGRIEVED PERSONS

37. If Defendant maintained or instituted any court proceedings against any Aggrieved Persons identified in the United States' final determinations (*see* Para. 29), the United States will determine whether such actions were retaliatory or otherwise taken in violation of the Fair Housing Act. In making this determination, the United States will consider whether the Defendant maintained or instituted the action because the tenant did not give in to, or stopped giving in to, his sexual demands, or because the tenant asserted the tenant's fair housing rights. To make this determination, the United States may request documents and information from Defendant relevant

to such proceedings. Defendant may object to any such request on the grounds that the burden and expense of the requested information outweighs its likely benefit or is otherwise not proportional to the needs of the United States. Requests for tenant files are presumed to be reasonable and proportional. If Defendant does not object, Defendant will provide the requested documents and information to the United States within thirty (30) days of the request. If the parties cannot reach agreement on any request for records under this Paragraph after a good faith effort, any party may seek the Court's assistance at any time.

38. If the United States determines any such proceedings were retaliatory or otherwise unlawful under the Fair Housing Act, it will inform Defendant. Defendant agrees, for purposes of this Consent Decree only, not to contest the United States' determination that proceedings were retaliatory or otherwise unlawful. Upon request, Defendant will, within ten (10) days, take the following actions so that the proceedings do not adversely affect the relevant Aggrieved Persons:

   a. Request that all 3 major credit bureaus[1] delete any information regarding the Aggrieved Persons and any co-tenant attributable to the proceedings; and

   b. Move the appropriate courts to dismiss any pending proceedings or vacate any judgment obtained.

Nothing in this Paragraph will prohibit Defendant from maintaining or instituting any non-retaliatory court actions against anyone for unpaid rent for the period of time during which Defendant owned a residential rental building.

39. Defendant will maintain all records relating to the actions taken in accordance with Paragraph 38, above, for a period of one (1) year after such action is taken and will, within thirty (30) days of taking such actions, send to the United States copies of the documents demonstrating

---

[1] Those bureaus are Equifax, Experian, and TransUnion.

compliance with the requirements of that Paragraph.

## X.   CIVIL PENALTY

40.    Within ten (10) days of the effective date of this Consent Decree, Defendant will pay $107,050 to the United States Treasury as a civil penalty under 42 U.S.C. § 3614(d)(1)(C) to vindicate the public interest. The payment will be in the form of an electronic fund transfer in accordance with written instructions to be provided by the United States. Payment of this is solely for purposes of settlement and does not constitute an admission of wrongdoing by or liability of Defendant.

41.    The civil penalty referenced in Paragraph 40 is a debt for a fine, penalty, or forfeiture payable to and for the benefit of the United States within the meaning of 11 U.S.C. § 523(a)(7) and is not compensation for actual pecuniary loss. Defendant will not seek to discharge any part of this debt in bankruptcy. This stipulation is solely for purposes of settlement and does not constitute an admission of wrongdoing by or liability of Defendant.

42.    In the event that Defendant or his agents engage in any future violation of the FHA, such violation(s) will constitute a "subsequent violation" under 42 U.S.C. § 3614(d)(1)(C)(ii).

## XI.   SCOPE AND DURATION OF CONSENT DECREE

43.    This Consent Decree is effective upon its entry by the Court.

44.    Unless otherwise specified, the provisions of this Consent Decree will remain in effect for six (6) years after the date of its entry.

45.    The Court will retain jurisdiction for the duration of this Consent Decree to enforce its terms, after which time the case will be dismissed with prejudice. The United States may move the Court to extend the duration of the Consent Decree in the event of noncompliance, whether intentional or not, with any of its terms, or if it believes the interests of justice so require.

46.  The United States may take steps to monitor Defendant's compliance with this Consent Decree, including but not limited to conducting fair housing tests.

47.  The Parties will endeavor in good faith to resolve informally any differences regarding interpretation of and compliance with this Consent Decree prior to bringing such matters to the Court for resolution. However, in the event the United States contends that there has been a failure by Defendant, whether willful or otherwise, to perform in a timely manner any act required by this Consent Decree or otherwise to act in conformance with any provision thereof, the United States may move this Court to impose any remedy authorized by law or equity, including but not limited to, an order requiring performance of such act or deeming such act to have been performed, and an award of any damages, costs, and reasonable attorneys' fees that may have been occasioned by the violation or failure to perform.

48.  Failure of the United States to insist upon strict performance of any provision of this Consent Decree will not be deemed a waiver of the United States' rights or remedies or a waiver by the United States of any default by Defendant in performance or compliance with any terms of this Consent Decree.

49.  If Defendant violates any of the provisions of this Consent Decree, the United States may seek any and all available remedies for those violations, including instituting a civil contempt proceeding.

50.  Any time limits for performance imposed by this Consent Decree may be extended by mutual written agreement of the Parties. Any other modifications to the provisions of this Consent Decree must be approved by the Court.

51.  Each signatory hereto warrants that he or she is competent and possesses the full and complete authority to covenant to this Consent Decree on behalf of himself, herself, or the party that he or she represents.

52.  Except as provided in Paragraph 47, the United States and Defendant will bear their own costs and attorneys' fees associated with this litigation.

53.     The Parties agree that, as of the effective date of this Consent Decree, litigation is not "reasonably foreseeable" concerning the matters described in this Consent Decree. To the extent that any party has previously implemented a litigation hold to preserve documents, electronically-stored information, or things related to the matters described above, that party is no longer required to maintain such litigation hold. Nothing in this Paragraph relieves any party of any other obligations under this Consent Decree, including, inter alia, Defendant's obligation to preserve documents under Paragraph 39 above.

IT IS SO ORDERED this __16TH__ day of __DECEMBER__, 2021.

_____
JULIAN XAVIER NEALS
UNITED STATES DISTRICT JUDGE

**FOR PLAINTIFF UNITED STATES OF AMERICA:**

Dated: December 13, 2021

Respectfully submitted,

| | |
|---|---|
| RACHAEL A. HONIG<br>Acting United States Attorney<br>District of New Jersey | KRISTEN CLARKE<br>Assistant Attorney General<br>Civil Rights Division<br><br>SAMEENA SHINA MAJEED<br>Chief |
| By: _____<br>MICHAEL E. CAMPION<br>Chief, Civil Rights Unit<br>SUSAN MILLENKY<br>Assistant U.S. Attorneys<br>970 Broad Street, Suite 700<br>Newark, NJ 07102<br>Phone: (973) 645-3141<br>Fax: (973) 297-2010<br>Email: susan.millenky@usdoj.gov | By: _____<br>R. TAMAR HAGLER<br>Deputy Chief<br>ERIN MEEHAN RICHMOND<br>KATHRYN LEGOMSKY<br>Trial Attorneys<br>Housing and Civil Enforcement Section<br>Civil Rights Division<br>U.S. Department of Justice<br>950 Pennsylvania Avenue NW – 4CON<br>Washington, DC 20530<br>Phone: (202) 307-0385<br>Fax: (202) 514-1116<br>E-mail: erin.richmond@usdoj.gov<br>Attorneys for Plaintiff<br>United States of America |

15

**FOR DEFENDANT JOSEPH CENTANNI:**

Dated: December 13, 2021

LONDA & LONDA

By: *[signature]*

RAYMOND S. LONDA
Londa & Londa 277
N. Broad St.
Elizabeth, NJ 07202
Phone: (908) 353-5600
Fax: (908) 353-5610
Email: raymondslonda@outlook.com

*[signature]*

Joseph Centanni

PASHMAN STEIN WALDER HAYDEN

By: *[signature]*

JOSEPH A. HAYDEN, JR.
BRENDAN M. WALSH
Pashman Stein Walder Hayden
Court Plaza South
21 Main St., Suite 200
Hackensack, NJ 07601
Phone: (201) 488-8200
Fax: (201) 488-5556
Email: jhayden@pashmanstein.com
bwalsh@pashmanstein.com

\#
\#
\#
\#
\#
\#
\#
\#
\#
\#
\#
\#
\#

## Attachment A

### List of Residential Rental Properties

121-125 Acme Street, Elizabeth, NJ 07202

701-723 N. Broad Street, Elizabeth, NJ 07208

920 N. Broad Street, Elizabeth, NJ 07208

506-516 Cherry Street, Elizabeth, NJ 07208

523-527 Cherry Street, Elizabeth, NJ 07208

1263-1265 Clinton Place, Elizabeth, NJ 07208

240-242 Edgar Place, Elizabeth, NJ 07202

246 Edgar Place, Elizabeth, NJ 07202

947-951 Elizabeth Avenue, Elizabeth, NJ 07201

1089-1099 Elizabeth Avenue, Elizabeth, NJ 07201

232-238 W. Grand Street, Elizabeth, NJ 07202

921-925 Jersey Avenue, Elizabeth, NJ 07202

141-147 W. Jersey Street, Elizabeth, NJ 07202

243-255 W. Jersey Street, Elizabeth, NJ 07202

130-134 Orchard Street, Elizabeth, NJ 07208

320-326 Washington Avenue, Elizabeth, NJ 07202

336-338 Washington Avenue, Elizabeth, NJ

300-314 E. Westfield Avenue, Roselle Park, NJ 07204

45-51 Morris Avenue, Springfield, NJ 07081

## Attachment B

<u>Release of Claims</u>

In consideration for the Parties' agreement to the terms of the Consent Decree they entered into in the case of *United States v. Joseph Centanni,* 2:20-cv-10053-JMV-AME (D.N.J.) as approved by the United States District Court for the District of New Jersey, and in consideration and contingent upon the payment of $_____, I _____, on behalf of myself and/or any decedent or estate whom I represent, hereby personally and for all of my (or, if applicable, the decedent's) heirs, executors, administrators, representatives, successors, and assigns release and forever discharge Joseph Centanni from (1) any and all claims that are or could have been set forth in the Complaint in the action named above, including, but not limited to, fair housing sexual discrimination claims, and (2) any and all civil claims arising out of or relating in any manner to actual, attempted, or threatened sexual discrimination, sexual assault, sexual harassment, or sexual misconduct of any kind that I may have had against him as of the entry of the Consent Decree. Nothing in this release will prohibit me from raising any appropriate defense in any court action filed against me by Joseph Centanni. I hereby acknowledge that I have read and understand this release and have executed it voluntarily and with full knowledge of its legal consequences.

Signed on_____, 2021.

_____

Signature

_____

Print Name